UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERIC RAMIREZ

               Plaintiff,

         -against-

PORT AUTHORITY OF NEW YORK &
NEW JERSEY (PANYNJ), PORT AUTHORITY
POLICE DEPARTMENT OF NEW YORK
& NEW JERSEY, POLICE OFFICER
KEVIN SCHPAKOW, POLICE OFFICER
THOMAS JARDINES, POLICE OFFICER
ROBERT JOSEPH, POLICE OFFICER
COLLIN JOURNEY, and POLICE
OFFICER ANDREW VANNATA, POLICE
OFFICERS "JOHN DOE" (1-5), THE CITY
OF NEW YORK, POLICE
COMMISSIONER WILLIAM BRATTON, THE
NEW YORK CITY POLICE DEPARTMENT,
NEW YORK COUNTY DISTRICT ATTORNEY
CYRUS VANCE, JR., individually and as District
Attorney of New York County, ASSISTANT DISTRICT
ATTORNEY RACHEL EHRHARDT, individually
and as an Assistant District Attorney, and ASSISTANT
DISTRICT ATTORNEY "JOHN DOE",
Individually and as an Assistant District Attorney,
all being sued in their official and individual capacities,

               Defendants.
------------------------------------------------------------------------X

**AMENDED COMPLAINT
and JURY DEMAND
Index No.: 15 CV 3225**

       The Plaintiff, ERIC RAMIREZ ("RAMIREZ"), by and through his attorneys, the law

office of CRONIN & BYCZEK, LLP, as and for his Proposed Complaint, respectfully allege,

upon information and belief, as follows:

## NATURE OF ACTION

  1. The Plaintiff brings this actions against the Defendants  Port Authority Of New York &

    New Jersey (PANYNJ), Port Authority Police Department Of New York & New Jersey,

as well as the following individuals, both personally and in their official capacities, Police Officer Kevin Schpakow, Police Officer Thomas Jardines, Police Officer Robert Joseph, Police Officer Collin Journey, Police Officer Andrew Vannata, and Detective Mark Acevedo, the New York City Police Department, and Police Commissioner William Bratton for false arrest, malicious prosecution, conspiracy, intentional and negligent infliction of emotional distress, negligence, and violations of the Plaintiff's civil rights and constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments. Specifically, the Plaintiff asserts a claim under 42 U.S.C. §§ 1981, 1983, 1985, and 18 U.S.C. § 926B in addition to state law claims.

2. The Plaintiff seeks damages, both compensatory and punitive, an award of costs, interest and attorney's fees and such other relief as this Court may deem just and equitable.

## JURISDICTION

3. The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

4. This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

5. Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to all state claims set forth in all counts.

6. The rights, privileges and immunities sought herein to be redressed are those secured by the First, Fourth and Fifth Amendments and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions

against race discrimination and racial profiling based upon 42 U.S.C. § 1981, 1983, 1985 and 18 U.S.C. § 926B.

## VENUE

7. Venue is proper within the Southern District of this Court, County of New York, State of New York, as the course of defendants' conduct took place within the boundaries of the County of New York, State of New York.

## PARTIES

8. At all times hereinafter mentioned, the Plaintiff is a Hispanic male.

9. At all times hereinafter mentioned, Defendant PORT AUTHORITY OF NEW YORK & NEW JERSEY was and still is a bi-state corporations duly organized and existing under the laws of the State of New York and New Jersey, and is authorized by law to maintain a Police Department for which it is ultimately responsible.

10. At all times hereinafter mentioned, Defendant PORT AUTHORITY POLICE DEPARTMENT OF NEW YORK & NEW JERSEY was and still is a bi-state corporations duly organized and existing under the laws of the State of New York and New Jersey, and is authorized to enforce the New York and New Jersey State laws.

11. At all times hereinafter mentioned, Defendant POLICE OFFICER KEVIN SCHPAKOW was and still is employed by the PORT AUTHORITY OF NEW YORK & NEW JERSEY as a member of the PORT AUTHORITY POLICE DEPARTMENT OF NEW YORK AND NEW JERSEY.  He is being sued in his individual and official capacity.

12. At all times hereinafter mentioned, Defendant POLICE OFFICER THOMAS JARDINES was and still is employed by the PORT AUTHORITY OF NEW YORK & NEW

JERSEY as a member of the PORT AUTHORITY POLICE DEPARTMENT OF NEW

YORK & NEW JERSEY.  He is being sued in his individual and official capacity.

13. At all times hereinafter mentioned, Defendant POLICE OFFICER ROBERT JOSEPH

was and still is employed by PORT AUTHORITY OF NEW YORK & NEW JERSEY as

a member of the PORT AUTHORITY POLICE DEPARTMENT OF NEW YORK &

NEW JERSEY.  He is being sued in his individual and official capacity.

14. At all times hereinafter mentioned, Defendant POLICE OFFICER COLLIN JOURNEY

was and still is employed by PORT AUTHORITY OF NEW YORK & NEW JERSEY as

a member of the PORT AUTHORITY POLICE DEPARTMENT OF NEW YORK &

NEW JERSEY.  He is being sued in his individual and official capacity.

15. At all times hereinafter mentioned, Defendant POLICE OFFICER ANDREW

VANNATA was and still is employed by PORT AUTHORITY OF NEW YORK &

NEW JERSEY as a member of the PORT AUTHORITY POLICE DEPARTMENT OF

NEW YORK & NEW JERSEY.  He is being sued in his individual and official capacity.

16. At all times hereinafter mentioned, Defendant DETECTIVE MARK ACEVEDO was and

still is employed by the NEW YORK CITY POLICE DEPARTMENT (NYPD) as a

member of the New York City Police Department. He is being sued in his individual and

official capacity.

17. Defendant CYRUS R. VANCE, JR., was, and still is, the New York County District

Attorney. In his capacity as District Attorney, defendant VANCE is responsible for the

creation, implementation, promulgation and enforcement of the policies, practices and/or

customs related to the investigation and prosecution of criminal actions in New York

County and for the supervision and training of the staff of the District Attorney's Office. He is sued in his individual and official capacity.

18. Defendant RACHEL EHRHARDT is employed by Defendant CITY as an Assistant District Attorney, New York County, and is responsible for prosecuting criminal cases on behalf of the District Attorney in the County of New York. She is sued in her individual and official capacity.

19. Prior to the commencement of this action and within sixty (60) days after the Decision and Order entered on July 15, 2014 by Judge Charles H. Solomon, which upheld the motion to dismiss the case against the Plaintiff herein, plaintiffs served a written Notice of Claim upon defendant the PORT AUTHORITY OF NEW YORK & NEW JERSEY in compliance with McKinney's Unconsolidated Laws of NY § 7107 and § 7108.

20. At least sixty (60) days have elapsed since the above-mentioned Notice of Claim was presented for adjustment and/or payment thereof, and defendant PORT AUTHORITY OF NEW YORK & NEW JERSEY has neglected and/or refused to make such payment and/or adjustment.

21. Prior to the commencement of this action, on or about September 9, 2014, within ninety (90) days of dismissal of the indictment by the court, complained of herein, plaintiff served a written Notice of Claim upon defendant PORT AUTHORITY OF NEW YORK and NEW JERSEY.

22. At least thirty (30) days have elapsed since the above-mentioned Notice of Claim was presented for adjustment and/or payment thereof, and defendant Port Authority of New York and New Jersey has neglected and/or refused to make such payment and/or adjustment.

## FACTUAL BACKGROUND

23. At all times hereinafter mentioned, the Plaintiff was and still is a Pennsylvania Constable, meaning that he is authorized under Pennsylvania law to possess a firearm.

24. Based upon the need to protect himself from criminals and other dangerous individuals, he comes into contact with in the course of his employment as a constable, the Plaintiff is duly authorized by Pennsylvania State Law to carry a firearm, for which he maintains a valid permit.

25. A Pennsylvania State Constable is a law enforcement officer covered under Federal Law 18 U.S.C. § 926B, also known as the Law Enforcement Officers Safety Act of 2004 (hereinafter referred to as "LEOSA"), which allows law enforcement officers to carry concealed firearms across state lines.

26. Despite not being within the vicinity of any weapons, on or about April 27, 2013, the Plaintiff was arrested by the Defendants for allegedly crossing state lines with a Pennsylvania-registered handgun and for leaving it within the reach of his child in an automobile parked in front of the Port Authority Bus Terminal.

27. Upon information and belief, the Plaintiff was the subject of racial profiling, as the defendants singled him out simply because he is a Hispanic male.

28. Defendants thereafter questioned the Plaintiff as to his identity. RAMIREZ provided both verbal and written identification that his name is "ERIC RAMIZREZ", further identifying himself as a Pennsylvania State Constable.

29. All of the while, the Plaintiff Eric Ramirez, was not in the vicinity of the automobile, as he was changing his daughter and using the restroom elsewhere in the Port Authority Building, as Ms. Bonstingl had previously told the police officers. When the police officers came upon the Plaintiff at the Port Authority Command, he was arrested and charged with one count of Criminal Possession of a Weapon in the second degree, a C Felony, and one count of Endangering the Welfare of a Child, an A misdemeanor.

30. At no point in his interaction with the Police Officers was the Plaintiff within the vicinity of the aforementioned handgun, nor did he have any knowledge of it being in the automobile while he and Ms. Bonstingl were travelling in the aforementioned motor vehicle.

31. Throughout this ordeal, the Plaintiff was held in Police Custody for seventy-two hours, and as a result, had his civil and constitutional rights taken from him. This is a clear and true case of false arrest, malicious prosecution, and intentional and negligent infliction of emotional distress.

32. Upon information and belief, Plaintiff Ramirez was the subject of racial profiling, as defendants singled him out simply because he is a Hispanic male.

33. Defendants thereafter questioned Plaintiff as to his identity. Ramirez provided both verbal and written identification.

34. When Plaintiff properly identified himself as a Pennsylvania constable, presenting his law enforcement identification and shield.

35. Plaintiff Ramirez was placed under arrest, detained, restrained, prevented from leaving, and placed in a holding cell with general population prisoners who were informed of his status as a police officer.

36. Plaintiff Ramirez was deliberately detained for over twenty-four hours before he was arraigned.

37. Upon information and belief, the defendant police officers consulted with the Office of the District Attorney of New York County.

38. The defendant police officers were unfamiliar with and/or ignored LEOSA.

39. The defendant ADA Rachel Ehrhardt, and the District Attorney's office ignored LEOSA.

40. At the stationhouse, plaintiff was wrongfully placed under arrest, falsely imprisoned, and maliciously charged with Criminal Possession of a weapon in violation of New York State Penal Law §265:03(3), despite the fact that Plaintiff Ramirez repeatedly properly identified himself as Eric Ramirez, a Pennsylvania State Constable.

41. Despite having properly identified himself to defendants, plaintiff RAMIREZ was falsely and maliciously charged.

42. Defendants failed to properly investigate plaintiff's true identify despite the fact that they were in possession of all material information and documentation.

43. Defendants were improperly trained and supervised or maliciously and willfully failed to follow proper NYPD procedures for properly identifying a suspect, encountering an out-of-state officer and verifying the officer's identity and his right under LEOSA to carry a firearm across state lines.

44. Defendant District Attorney knew and/or should have known that their employees would encounter a situation similar to the one regarding the plaintiff, in which an armed out-of-state peace officer would enter New York State.

45. The situation which was encountered by the individual defendants was the kind which training would have made less difficult.

46. The defendants knew and/or should have known that the wrong choice by them would result in the deprivation of plaintiff's constitutional rights.

47. Defendant EHRHARDT assisted the NYPD defendants in the investigation of the plaintiff outside of the scope of her role as a prosecutor.

48. The defendants acted without reasonable basis and in knowing violation of LEOSA.

49. Thereafter, on or about June 2, 2006, The New York County District Attorney's Office, and PANYNJ and NYPD defendants, despite having been informed as to plaintiff's true identity and status as a Pennsylvania State Constable, and of the Federal Law that protects plaintiff, along with their faulty investigation, proceeded to indict plaintiff Ramirez on the charge of Criminal Possession of a Weapon in the Second Degree, a C Felony and one count of endangering the welfare of a child, a class A misdemeanor.

50. Upon information and belief, defendant Assistant District Attorney EHRHARDT was informed of plaintiff's proper identity and status as a Pennsylvania State Constable prior to said indictment, yet the District Attorney's Office nevertheless proceeded with said obvious and apparent false and malicious charges.

51. Pursuant to 42 Pa.C.S. § 2941, Pennsylvania State Constables are law enforcement officers who carry the powers of arrest both when executing warrants and for breaches of the peace that are done in their presence.

52. Pennsylvania State Constables are fully certified to carry weapons under 42 Pa.C.S. § 2948, and as such, they are covered under 18 U.S.C. § 926B, also known as H.R. 218 or the Law Enforcement Officers Safety Act of 2004 ("LEOSA"), which allows law enforcement officers to carry firearms across state lines.

53. LEOSA preempts state and local law.

54. LEOSA states, in pertinent part:

    a.  Notwithstanding any other provision of the law of any State or any political subdivision thereof, an  individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

    b.  This section shall not be construed to supercede or limit the laws of any State that:

        i.  permit private persons or entities to prohibit or restrict the possession of concealed firearms on their property; or

        ii.  prohibit or restrict the possession of firearms on any State or local government property, installation, building, base or park.

    c.  As used in this section, the term 'qualified law enforcement officer' means an employee of a governmental agency who—

        i.  is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has statutory powers of arrest;

        ii.  is authorized by the agency to carry a firearm;

        iii.  is not the subject of any disciplinary action by the agency;

        iv.  meets standards, if any, established by the agency which require the employee to regularly qualify in the use of a firearm;

    d.  The identification required by this subsection is the photographic identification issued by the governmental agency for which the individual is employed as a law enforcement officer.

55. The District Attorney's Office and the NYPD failed to train and supervise their employees regarding LEOSA and acted with deliberate indifference of the rights of persons such as the plaintiff.

56. On or about April 29, 2014, the Honorable Charles H. Solomon of New York County Supreme Court held that the criminal charges against the plaintiff must be dismissed.

57. On April 29, 2014, Judge Solomon, after examining the Grand Jury minutes *in camera*, found the evidence before the Grand Jury to be legally insufficient to sustain both counts of the indictment and therefore the false and malicious criminal actions against Plaintiff Ramirez was dismissed on the merits.

## AS AND FOR A FIRST CAUSE OF ACTION PURSUANT TO 42 U.S.C. 1981 AGAINST ALL DEFENDANTS

58. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "57" with the same force and effect as if fully set forth herein.

59. Throughout the events recited herein, the individual Defendants, while acting under the color of law, subjected the Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the Equal Protection and Due Process guarantees of the Fourteenth Amendment of the Constitution, and Civil Rights as guaranteed under Article I, Section II, of the New York State Constitution.

60. Plaintiff has been deprived of his Constitutional Rights to be free of discrimination based upon race and to be free of racial profiling, and has been damaged and suffered emotional distress and conscious pain and suffering as a result of these actions.

61. The actions of Defendants, in depriving Plaintiff, of his Constitutional and Civil Rights, as hereinbefore stated, were willful and malicious acts.

62. In addition to Plaintiff, Defendants have similarly violated the rights of other similarly situated peace officers, all as part of a deliberate policy and a deliberate course of conduct.

63. As a result of the aforesaid wrongful, reckless and intentional acts of the Defendants, the Plaintiff has been damaged in the amount of FIVE MILLION ($5,000,000.00) DOLLARS.

64. Based on the foregoing, Plaintiff is further entitled to punitive and exemplary damages in the sum of TWO MILLION ($2,000,000.00) DOLLARS.

### AS AND FOR A SECOND CAUSE OF ACTION PURSUANT TO 42 USC § 1983 AGAINST ALL INDIVIDUAL DEFENDANTS

65. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. The individual defendants have embarked on a course of conduct that deprived plaintiff of his rights under the United States Constitution, federal and state law.

67. The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by plaintiff are examples of defendants' violations of plaintiff's civil rights.

68. The actions of defendants, acting under color of state and local law, custom and usage, have deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of their rights to due process and equal protection under the First, Fourth, Fifth and Fourteenth Amendments and 18 U.S.C. 926B (LEOSA).

69. Plaintiff was unlawfully arrested, imprisoned and maliciously prosecuted by defendants, without any cause or provocation whatsoever.

70. The arrest, imprisonment and prosecution of plaintiff was caused by defendants without authority of the law and without any reasonable cause or belief that plaintiff was in fact guilty of Criminal Possession of a Weapon (NYS Penal Law § 265.03(3)) and in knowing disregard of 18 U.S.C. 926B (LEOSA).

71. That defendants acting within the scope of their authority and within the scope of their employment, arrested and imprisoned plaintiff, even though defendants knew, had the opportunity to know, or should have known, that the matters hereinbefore stated were alleged wrongfully and unlawfully.

72. The individual defendants conspired together to violate plaintiff's rights, in that the individual officers acted in concert to unlawfully violate plaintiff's rights as did the defendant District Attorney CYRUS VANCE.

73. The conduct and actions of the individual defendants, acting under color of law, was done intentionally, maliciously and/or with reckless disregard of the natural and probable consequences of their acts, was done without lawful justification and was designed to and did cause specific pain and suffering, mental anguish, extreme emotional distress, humiliation and embarrassment in violation of Plaintiff's constitutional rights as guaranteed under the Fourteenth Amendment, in violation of 42 U.S.C. §1983.

74. As a consequence of defendants' unlawful actions, plaintiff demands damages in the amount of Five Million ($5,000,000.00) Dollars.

### AS AND FOR A THIRD CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983 POLICY AND PRACTICE UNDER MONELL V. DEPARTMENT OF SOCIAL SERVICES AGAINST THE MUNICIPAL DEFENDANTS

75. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs "1" through "74" hereinabove as if more fully set forth at length herein.

76. Defendants' violations of Plaintiff's constitutional rights while acting under color of law resulted from a Municipal custom, policy and practice pursuant to Monell v. Department of Social Services, 438 U.S. at 694 n.58, 98 S.Ct. 2037 n.58.

77. Defendant NYPD and New York County District Attorney failed to train its police officers and assistant district attorneys and displayed a deliberate indifference to the constitutional rights to those within the State of New York and interstate visitors.

78. Defendants knew or should have known of the constitutional violations by its staff but repeatedly failed to make any meaningful investigation into charges of constitutional violations by its staff.

79. Defendants have deprived plaintiff of his civil, constitutional and statutory rights as a result of the unlawful and improper police stop due to the practice and policy of racial profiling and are liable to plaintiff under 42 U.S.C. §1983.

80. That by reason of the aforesaid Plaintiff has been damaged in the sum of FIVE MILLION DOLLARS ($5,000,000.00).

### AS AND FOR A FOURTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1985 AS AGAINST THE INDIVIDUAL DEFENDANTS

81. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "80" as if set forth in full herein.

82. Defendants have conspired with and amongst each other to deprive Plaintiff of his rights under the United States Constitution and federal and state law.

83. Defendants have conspired to violate Plaintiff's civil rights pursuant to 42 U.S.C. §1985, when they willfully and knowingly conspired together to cause Plaintiff to be falsely arrested and maliciously prosecuted for possession of a weapon despite his status as a peace officer and LEOSA.

84. The actions and omissions of Defendants, in depriving Plaintiff of his Constitutional and Civil Rights, by their participation and conduct in facilitating the false arrest, filing of the criminal charges and criminal prosecution, which resulted in the dismissal of the criminal charges on the merits, as herein stated, were willful and malicious acts.

85. Such policy and practice is an intentional and concerted effort by defendants PANYNJ, Port Authority Police, the New York County District Attorney's Office and the NYPD.

86. By reason of this conspiracy, each of Defendants has violated 42 U.S.C. §1985.

87. As a consequence of defendants' unlawful actions, plaintiff demands damages in the amount of Five Million ($5,000,000.00) Dollars.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
## AGAINST DEFENDANTS FOR FALSE ARREST

88. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "87" as if set forth in full herein.

89. Plaintiff was arrested and imprisoned wrongfully and falsely by defendants, without probable cause, any right or legal grounds. Defendants deliberately disregarded their duty to investigate plaintiff's identity, status as a law enforcement officer and right to carry a firearm across state lines and the application of LEOSA.

90. Defendants falsely and maliciously accused plaintiff of Criminal Possession of a Weapon in the Third Degree.

91. Defendants SCHPAKOW, JARDINES, JOSEPH, JOURNEY, and POLICE OFFICER VANNATA, and "JOHN DOES" 1 THROUGH 5, without any legal basis or reasonable cause or belief that plaintiff was in violation of the law, caused plaintiff RAMIREZ to be falsely arrested and imprisoned and maliciously prosecuted.

92. The defendants, their agents, servants and employees, acting within the scope of their authority and within the scope of their employment, detained, imprisoned and maliciously prosecuted plaintiff, even though defendants, their agents, servants and employees knew, had the opportunity to know and/or should have known through thorough investigation, that the matters alleged against plaintiff were false.

93. Plaintiff was wholly innocent of the charges proffered against him and did not contribute in any way to the conduct of defendants, their agents, servants and employees.

94. Plaintiff was forced to answer to the false and malicious charges concocted by defendants, and on April 29, 2014, the Criminal Court of New York County dismissed all charges against plaintiff.

95. As such, the charge brought against plaintiff by defendants was terminated in his favor.

96. That by reason of the aforesaid, plaintiff has been damaged in the amount of Five Million ($5,000,000.00) Dollars.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS FOR MALICIOUS PROSECUTION**

97. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "96" above, as if fully set forth herein.

98. On or about April 12, 2006, defendants wrongfully and falsely accused plaintiff of Criminal Possession of a Weapon.

99. Despite the fact that plaintiff was wholly innocent of said false charge, plaintiff was subjected to malicious prosecution by defendant ADA EHRHARDT.

100. Defendant ADA EHRHARDT falsely and maliciously, and without reasonable cause thereupon, continued to charge and prosecute plaintiff, disregarding any duty to investigate.

101. Defendants, their agents, servants and employees, acting in performance of their employment and within the scope of their authority, failed to investigate and/or withheld vital information before a grand jury and before the criminal court.

102. Defendants, their agents, servants and employees, acting in performance of their employment and within the scope of their authority, falsely and maliciously and without probable cause, charged plaintiff with a crime, arrested him and prosecuted him.

103. Said malicious prosecution was terminated in plaintiff's favor.

104. By reason of the aforesaid unlawful and malicious prosecution, plaintiff was deprived of his liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body, and was held up to scorn and ridicule, was injured in his character and reputation, and was prevented from attending to his job duties and responsibilities.

105. That by reason of the aforesaid, plaintiff has been damaged in the amount of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS CITY OF NEW YORK, COMMISSIONER BRATTON AND NEW YORK COUNTY DISTRICT ATTORNEY VANCE FOR FAILURE TO TRAIN AND/OR SUPERVISE

106. The plaintiff repeats, reiterates and realleges each and every allegation contained in

    paragraphs numbered "1" through "105" above, as if fully set forth herein.

107. The defendants failed to properly train and supervise their employees regarding the stop,

    detention, investigation, arrest and prosecution of individual peace officers from out of

    state who come into New York State in order to conduct official business and the

    application of LEOSA.

108. Defendants failed to train police officers and assistant district attorneys regarding the

    proper procedures and investigation to be employed when out of state law enforcement

    personnel with service weapons are encountered.

109. The defendants' failure to train and supervise as described above amounted to deliberate

    indifference to the Constitutional Rights of persons such as the plaintiff.

110. Defendants failed to implement and enforce appropriate supervision by and of its staff

    so as to prevent and remedy violations of citizens' Constitutional Rights.

111. That by reason of the aforesaid, plaintiff has been damaged in the amount of Five

    Million ($5,000,000.00) Dollars.

## AS AND FOR AN EIGHT CAUSE OF ACTION AGAINST DEFENDANT CITY OF NEW YORK AND NEW YORK COUNTY DISTRICT ATTORNEY CYRUS VANCE JR. AND ASSISTANT DISTRICT ATTORNEY RACHEL EHRHARDT

112. Prior to and throughout the presentation to the Grand Jury both ADA Ehrhardt and The

    District Attorney were aware that Plaintiff Eric Ramirez was a law enforcement officer

    and a Pennsylvania Constable and as such was permitted by Federal Law to carry a hand

    gun across the state line, specifically 18 U.S.C 926B also known as H.R. 218 of the Law

Enforcement Officers Safety Act of 2004 ("LEOSA") which allows law enforcement officers to carry firearms across state lines.

113. Nonetheless ADA Ehrhardt, knowingly, deliberately, and purposefully ignored the Federal Law and held the Plaintiff Ramirez in jail for seven days pending the posting of bail and then further presented the matter to the Grand Jury and obtained an Indictment for Criminal Possession of a Weapon in the second degree a class C Felony.

114. The conduct of ADA Ehrhardt in prosecuting and indicting the Plaintiff was malicious and deliberately in violation of the Federal Law and the U.S. Constitution which specifically permit and authorize the very conduct of constable Ramirez for which he was indicted and required to retain counsel and to appear in court prior to the indictment being dismissed by the Hon. Charles H. Solomon J.S.C.

115. Plaintiff had been singled out for prosecution, while others who have engaged in conduct of the same or similar type have not been prosecuted.  Further the government's discriminatory selection of Plaintiff for prosecution has been invidious or in bad faith such as based on religion, race, or desire to prevent the exercise of constitutional rights. United States v. Berrios, 501 R.2d 1207. (2nd Cir. 1974); also, People v. Miller, 138 Misc. 2d 639, 524 N.Y.S. 2d 622 (Supp. CtNY County 1988)

116. Plaintiff was charged with Criminal Possession of a Weapon in the Second Degree in violation of PL 265.03 (3), despite being a law enforcement officer, authorized under Federal law to carry a firearm across state lines. Upon information and belief, there does appear to be a case tried in New York County in which an out-of-state law enforcement officer was subjected to prosecution for carrying a weapon across state lines but then

subsequently the charges were dismissed by the Hon. Ronald A. Zweibel, J.S.C. in

People v. Arthur Rodriguez (IN No. 2917/06) attached hereto as Exhibit A.

117. Additionally, there is the matter of People v. Benjamin L. Booth Jr. Indict No. 2007-

940, County Court State of New York, Orange County attached here to as Exhibit B.

Therein the Hon. Robert H. Freehill found that the Defendant, a member of the Coast

Guard, had a waiver from the Coast Guard for the weapon and he also had a status as a

law enforcement officer.  Accordingly, the court found that the defendant Booth was

exempt from prosecution.

118. Furthermore, upon information and belief, Assistant District Attorney was able to

ascertain Plaintiff's identify and current status as a Pennsylvania State Constable.  It is

obvious that the People were anxious to prosecute Plaintiff based on New York State's

anti-gun sentiment.

119. As for the second element, it is clear that the government's discriminatory selection of

Plaintiff for prosecution was in bad faith based on the desire to prevent his exercise of

constitutional rights.

120. It is clear by their actions that the District Attorney's Office has singled out Plaintiff for

prosecution in violation of his constitutional rights since this form of discriminatory

prosecution violates Plaintiff's Constitutional Rights.


## JURY TRIAL

121. Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays that this Honorable Court grant the following relief:

20

A.      For the First Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS; and punitive damages sum of TWO MILLION

($2,000,000.00) DOLLARS;

B.      For the Second Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

C.      For the Third Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

D.      For the Fourth Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

E.      For the Fifth Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

F.      For the Sixth Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

G.      For the Seventh Cause of Action against defendants in the amount of FIVE

MILLION ($5,000,000.00) DOLLARS;

H.      In all causes of action, reasonable attorneys' fees, pre-judgment interest, costs of

this action and for such other relief as this Court may deem just and proper.

Dated:  Lake Success, New York
        March 19, 2015

CRONIN & BYCZEK, LLP

ANTHONYMAHONEY (AM2205)
1983 Marcus Avenue, Suite C-120
Lake Success, New York 11042
(516) 358-1700

21

# EXHIBIT A

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:              PART 41
-------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,   :

                                       :  Indictment Number 2917/06

             -against-                 :

ARTHUR RODRIGUEZ,                      :  Decision & Order

                                       :
                       Defendant.
-------------------------------------x
```

ZWEIBEL, J.:

The defendant is charged with Criminal Possession of a
Weapon in the Third Degree, a violation of Penal Law § 265.02(4).
The People allege in substance that on April 12, 2006, at
approximately 7:30 p.m. in the vicinity of 1250 5th Avenue, New
York, New York, the defendant possessed a loaded firearm in his
vehicle.  There does not seem to be any dispute over whether
defendant possessed a loaded firearm.  The defendant is a law
enforcement officer, namely, a Pennsylvania Constable, authorized
to carry a concealed weapon in Pennsylvania.  The People concede
that defendant is a constable.  The only real issue in this case
is whether by virtue of his status as a law enforcement officer,
defendant was entitled to carry his weapon across State lines and
therefore, is exempt from prosecution for a violation of Penal
Law § 265.02(4) under either or both New York State and Federal
law.

In order to flesh out the record on this issue, the Court,
on October 20, 2006, held a hearing with respect to defendant's

1

motion to dismiss.  The sole witness at the hearing was
defendant, Manuel Rodriguez, who I found to be credible.[1]

Prior to defendant testifying, the Assistant District
Attorney ("ADA") stated, that with respect to defendant's
presence in New York County for service of a warrant, she was
able to verify that there was an active September 2005 warrant
from Pennsylvania for a person located in Kings County, New York.
According to the ADA, she spoke to Pennsylvania Judge David Leh,
who was the judge who signed the warrant on September 2, 2005,
who further confirmed that the warrant was assigned thereafter to
defendant.[2]  However, Judge Leh was uncertain as to when and if
defendant had attempted to execute the warrant.

The ADA also commented on the fact that in the Grand Jury,
the arresting officers testified to being aware that defendant

---

[1]Although the People had approximately one month to prepare
for this hearing, they apparently notified their officers the day
prior to the hearing.  Prior to sending through that
notification, no one spoke to the officers or verified their
availability.  Needless to say, the officers did not appear nor
did the People have any information as to the reason for the
officers' failure to appear.  In fact, the People did not know if
the officers actually received the notifications.  The Court
denied the People's request for an adjournment because of the
length of time the People had to prepare for the hearing, and
because the People did not even know if the officers were
available Monday.

[2]On cross-examination, when asked about when he received the
assignment to execute the warrant in question, Constable
Rodriguez did not remember the exact date that the warrant was
issued nor could he state on what date he did what in his
attempts to locate the person in the warrant and execute it.

2

was a Pennsylvania Constable and that his duties included serving Pennsylvania warrants.

Defendant testified that his name is Manuel Rodriguez, not Arthur Rodriguez as stated in the indictment, and that he is a Pennsylvania State Constable, employed by the Commonwealth of the State of Pennsylvania, as a sworn law enforcement officer.[3] According to Constable Rodriguez, this is his second term as an elected Constable. His duties include courtroom security, transporting prisoners, executing warrants, both criminal and civil, "PFA's", "standby", and service of court papers. The warrants are executed wherever they are issued. Constable Rodriguez is authorized to collect fines upon confirming the identity of the person so named in the warrant. According to the constable, constables, including himself, go outside the state to locate the person named in the warrant and to try to resolve it. Constables of Pennsylvania are authorized to carry a gun[4] and that he personally was authorized, qualified and certified to

---

[3] Constable Rodriguez denied on cross-examination that he ever told the officers who arrested him that his name was Arthur Rodriguez.

[4] Although authorized to carry a gun in Pennsylvania by virtue of their status as constables, constables are not issued weapons by the State of Pennsylvania but rather they purchase their own weapons. Defendant also admitted having a personal license in Pennsylvania to carry a firearm.

carry a weapon as a Pennsylvania State constable.[5]

Constable Rodriguez testified on cross-examination that he has two jobs and that one of those jobs is his full-time employment as a Constable in Pennsylvania.  According to the Criminal Justice Administration ("CJA") form based on an interview of the defendant at the time of his arraignment, defendant also stated that his full-time profession was construction worker.  Defendant also stated that he told the person from CJA that he was a Pennsylvania State Constable.

On April 12, 2006, at approximately 4:30/5:00 p.m., Constable Rodriguez was sitting in his legally parked car on 5th Avenue.  He was waiting for his friend Aurora Flores to come down so that he could give her a lift on his way to Brooklyn to execute a warrant[6].  Constable Rodriguez intended to contact the person named in the Brooklyn warrant and see whether the warrant could be "expunged" there and then.  After executing the Brooklyn warrant, Constable Rodriguez was going to go through the Holland Tunnel and head back to Pennsylvania, executing the other four

---

[5]The Court took judicial notice of the Statutes of Pennsylvania that do in fact exempt constables, as sworn law enforcement officers, from the licensing requirement and permits constables to carry a weapon without a license under the Pennsylvania Firearms Act, citing Title 18 of the Pennsylvania Statutes, section 6106, subdivision (b)(1) [18 Pa.C.S.A. § 6106(b)(1)].

[6]The warrant was for a summary offense, payment of a surcharge upon the person's named in the warrant having pled guilty to public drunkenness and misconduct.

4

warrants he had in his possession on that date along the way.

While he was waiting in his parked car, Constable Rodriguez was approached by police officers who came alongside his vehicle on the right side.  Constable Rodriguez rolled down his window and the officers asked him "What you doing here?  Can you-you have any identification because this looks like an unmarked car, out of state plates, Pennsylvania plates?"  In response, Constable Rodriguez showed the officers his identification and shield.

According to Constable Rodriguez, the officers proceeded to block his car in its parking space.  By this time, Ms. Flores had arrived and said "Let's go."  Constable Rodriguez told her, "We can't go nowhere.  These guys got me blocked in."

The officers then exited their vehicle and approached defendant on his left side and asked him for additional identification.  Constable Rodriguez testified that no matter what form of identification he showed the officers, the officers told him that the identification was fake.  Because of the officers scepticism with respect to defendant's identifications, Constable Rodriguez reached up and removed all the warrants he was executing from his visor.  He showed the officers the warrants and informed them that they were issued by the State of Pennsylvania and that he is an authorized officer.  The officers allegedly told him that the warrants were fake as well.

5

Constable Rodriguez also testified that Ms. Flores tried to tell the officers that his identification was not fake and that he was a Pennsylvania Constable. According to the constable, the officers told Ms. Flores to shut up.

The officers asked Constable Rodriguez whether he was carrying a weapon. Constable Rodriguez said yes. According to the constable, he was carrying a concealed weapon in a shoulder rig/holster under his shirt.

Constable Rodriguez stated that at the time of his arrest, he was acting in his official capacity as a Pennsylvania State Constable.

The Court notes that Penal Law 265.20(a)[11] specifically states that Penal Law § 265.02 does not apply to "[p]ossession of a firearm ... by a police officer or sworn peace officer of another state while conducting official business within the state of New York." Thus, if a constable is considered a peace officer in the State of Pennsylvania and defendant was conducting official business within the State of New York, he may be exempt from prosecution pursuant to Penal Law § 265.20(a)[11].

First, this Court must determine whether a constable is a "peace officer" in Pennsylvania. It is clear to this Court that constables are peace officers in Pennsylvania whose central functions and activities partake of exercising executive powers. Because constables are considered "related staff" who serve the

6

unified judicial system but are not personnel of the judicial
system and are not supervised by the courts, they are considered
"independent contractors" with respect to the Court system.

Statutes govern the election and qualifications of
constables; the appointment and qualifications of deputies; the
removal of constables; the duties and liabilities of constables;
the fees of constables; and actions against constables or their
sureties.  The Court takes judicial notice of the various
Pennsylvania statutes governing constables, including those in
Title 13 of the Pennsylvania Commonwealth Statutes ("Pa.C.S.")
section 40 through 46 and Tile 18 of the Pennsylvania
Commonwealth Statutes ("Pa.C.S.") section 6106.  In fact, 13 PS §
40 is entitled, "Peace Officers" and states that "Constables...
shall perform all those duties authorized or imposed on them by
statute."  Additionally, according to the Supreme Court of the
State of Pennsylvania, a "constable is a peace officer" (see In
re Act 147 of 1990, 528 Pa., at 470, 598 A.2d, at 990).  As noted
by the Pennsylvania Supreme Court, "a constable is a known
officer charged with conservation of the peace, and whose
business it is to arrest those who have violated it.  By statute
in Pennsylvania, a constable may also serve process in some
instances.... As a peace office, and as a process server, a
constable belongs analytically to the executive branch of
government, even though his job is obviously related to the

courts.  It is the constable's job to enforce the law and carry
it out, just the same as the job of district attorney's, sheriffs
and the police generally" (see In re Act 147 of 1990, 528 Pa., at
470, 598 A.2d 985 [citations omitted]).  In fact, Pennsylvania
constables have the right in Pennsylvania to conduct warrantless
arrests for felonies and breaches of the peace, including
warrantless arrests for felony violations of the drug laws (see
Commonwealth v. Taylor, 450 Pa. Super. 583, 596, 677 A.2d 846,
852 [Pa. 1996]).  They also have statutory powers of arrest in
certain situations (see e.g. 32 P.S. §582; 53 P.S. §13349).
Moreover, they are exempt from the need to have a carry license
for their weapon pursuant to 18 Pa.C.S. § 6106.  Therefore, this
Court finds that a Pennsylvania constable is a "peace officer" of
another state as that term is used in Penal Law § 265.20(a)[11].

Second, this Court must determine whether defendant was in
New York to conduct official business within the State of New
York.  According to defendant, he was in the State of New York on
official Pennsylvania Court business.  Allegedly, defendant was
here to serve warrants, which he had in his possession at the
time of his arrest, issued by the Pennsylvania courts.  If
defendant was in fact in New York on official business at the
time of his arrest, it seems to this Court that he is exempt
under State law from prosecution.  Based on the officer's
testimony, and there is nothing in the Grand Jury minutes, which

8

contradicts the officer's testimony, this Court finds that defendant was in New York on official business.  This Court does not view as relevant the fact that he was legally parked while awaiting a friend to whom he had offered a lift on his way to Brooklyn to serve and/or collect on an active warrant.[7]

Apparently recognizing this might cast doubt on whether he was in New York County on official business, defendant argues that, pursuant to 18 U.S.C. §629B, he is permitted to carry a weapon across state lines and that the instant prosecution is pre-empted by the Federal statute.  18 U.S.C. § 926B, also known as H.R.218 or the Law Enforcement Officers Safety Act of 2004, states, in pertinent part:

> (a) Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b)....
>
> (c) As used in this section, the term "qualified law enforcement officer" means an employee of a governmental agency who--
>
> (1) is authorized by law to engage in or supervise the prevention, detection, investigation,

---

[7]The Court notes that there is no indication in the Grand Jury minutes that defendant was not parked legally or that he was parked by a hydrant.  In fact, it appears from the Grand Jury minutes that the officers did not approach defendant because of any illegality but rather because the officers believed that defendant's vehicle might be an unmarked police vehicle and that he might be an officer needing assistance.

9

or prosecution of, or the incarceration of any person
for, any violation of law, and has statutory powers of
arrest;

(2) is authorized by the agency to carry a firearm;

(3) is not the subject of any disciplinary action by
the agency;

(4) meets standards, if any, established by the
agency which require the employee to regularly
qualify in the use of a firearm;

(5) is not under the influence of alcohol or another
intoxicating or hallucinatory drug or substance; and

(6) is not prohibited by Federal law from receiving a
firearm.

(d) The identification required by this subsection
is the photographic identification issued by the
governmental agency for which the individual is
employed as a law enforcement officer....

The Court notes that there is absolutely no case law or

articles written about this statute apart from the Congressional

Record statements at the time of its enactment.  Thus, this is

truly a case of first impression.

Looking at H.R. 218, in terms of the known facts in this

case, the Court believes that defendant qualifies under it.  As

defendant points out, the office of the constable is mandated in

the Pennsylvania State Constitution.  Constables are elected,

sworn law enforcement officers with mandatory training

requirements and state powers to make an arrest, despite their

lack of government funding.  They are independent employees of

the State of Pennsylvania whose identification cards are issued

10

by the County as a State identification.  Additionally, they are paid for their services by the District Courts and/or the Comptroller's office.

The Court notes that the Grand Jury minutes reflect that defendant showed the arresting officers his badge and his official identification identifying him as a Pennsylvania constable, a fact that the officers themselves admit they verified.  As already noted, the People basically concede that defendant is a constable.

Additionally, 42 Pa.C.S. § 2942 states that:

> [w]hile a constable is performing duties other than judicial duties, regardless of whether or not he is certified under this subchapter, he shall not in any manner hold himself out to be active as an agent, employee or representative of any court, district justice or judge.

The clear implication of this statute is that when a constable is performing judicial duties, he is an agent employee and/or representative of the court, district justice or judge assigning the judicial duties to him.  In this case, the People independently verified, by speaking with the assigning judge, that the warrant defendant claimed to be serving was assigned to defendant and was still active.  Thus, he was clearly performing a judicial duty.

Moreover, a constable is elected within an electoral district, i.e. a ward, borough or the like.  The elected constable, with the approval of the court, appoints deputy

11

constables (see 13 P.S. § 21; Com. v. Roose, 456 Pa. Super. 238,
240, 690 A.2d 268, 269 [Pa. Sup. 1997]; aff'd 551 Pa. 410, 710
A.2d 1129 [Pa. 1998]).   Constables and deputy constables do not
have uniforms and they are not provided with municipal vehicles
but rather use their own private cars (see Com. v. Roose, 456 Pa.
Super., at 241, 690 A.2d, at 269).   They are not paid a salary by
any municipal subdivision as police and sheriffs are, but are
more like independent contractors whose pay is on a per job basis
(see 13 P.S. §§ 63-75; Com. v. Roose, 456 Pa. Super., at 240, 690
A.2d, at 269).   They are not considered State employees in order
to receive legal representation when sued in connection with
their duties (see Com. v. Roose, 456 Pa. Super., at 240, 690
A.2d, at 269).   No one supervises constables in the way a police
chief supervises police officers or a sheriff supervises
deputies.   No municipality is responsible for their actions in
the way a city, borough or township is responsible for its
sheriff's office.   In fact, the Pennsylvania Supreme Court has
found unconstitutional legislation which attempted to place
constables under the supervisory authority of the courts (see In
re Act 147 of 1990, 528 Pa. 460, 598 A.2d 985 [Pa. 1991]).

      Despite being termed an "independent contractor" by the
Courts, it appears that, with respect to the work done by a
constable for a court, the constable is performing "judicial
duties" and is in fact "employed" by the court, district justice

12

or judge which engaged his services.  Again, according to
defendant's attorney, defendant was actively performing judicial
duties at the time of his arrest as he was on his way to serve
warrants within New York State which were in his possession at
the time of his arrest.  Thus, there appears merit to defendant's
argument that he is a government employee within the meaning of
the term as it is used in 18 U.S.C. § 926B.

Moreover, pursuant to 13 P.S. § 31 [Intemperance, neglect of
duty, malfeasance or misfeasance, petition; verification;
additional security], the Pennsylvania courts of quarter session

> ...also have full power, on petition of any
> citizen or citizens of said county, setting forth
> the complaint, and verified by affidavit, to inquire
> into the official conduct of any constable of said
> county ... and to decree the removal of such
> constable from office, and to appoint a suitable
> person to fill the vacancy...

Thus, the fact that the Pennsylvania courts have full power
to remove Pennsylvania State Constables from their positions and
the fact that they are elected officials, conflicts with the
People's theory that Pennsylvania State Constables are not
government employees.

Based on this analysis, the Court finds that defendant is an
"employee of a government agency" as that phrase is used in 18
U.S.C. § 926B.  The Court has reviewed all the other requirements
listed under this section and finds that Pennsylvania constables
come under the protection of 18 U.S.C. § 926B.  Accordingly, the

13

motion to dismiss the instant indictment is granted.

Moreover, looking at the legislative history behind this law, it seems that defendant, in his official capacity of constable and in performance of his statutorily authorized duties, was the type of individual the statute wanted preempted from prosecution.  Congress drafted this legislation to help stop and deter crime throughout the country.

Assuming _arguendo_ that Pennsylvania State Constables are "government employees," then defendant's prosecution is preempted by 18 U.S.C. § 926B, also known H.R. 218 or the Law Enforcement Officers Safety Act of 2004 appears to have merit.  Accordingly, the motion for inspection and/or dismissal of the Grand Jury minutes, is granted to the extent that the Court has examined the Grand Jury minutes in camera and found the evidence before the Grand Jury to be legally insufficient.  The People did not inform the Grand Jury that the instant prosecution was preempted if they found that the constable was here in the furtherance of his official duties or if he qualified as a law enforcement officer under H.R. 218.  Accordingly, the motion to dismiss the indictment is granted.

Defendant's property, which was seized from him at the time of his arrest, is to be returned forthwith unless this Decision, Order and Judgment is stayed by virtue of the People filing an appeal from it in the Appellate Division, First Department.

14

This constitutes the decision, order and judgment of this Court.

ENTER:

Hon. Ronald A. Zweibel, J.S.C.

Dated: November 3, 2006

15

Exhibit B

# EXHIBIT B

County Court, Orange County, New York.

The PEOPLE of the State of New York v. Benjamin L. BOOTH, Jr., Defendant.

Decided: May 29, 2008

William J. Wolfe, Campbell Hall, DeCotiis FitzPatrick Cole & Wisler (Steven C. Mannion and Zachary A. Kozak of counsel), and LT John Cashman, U.S. Coast Guard, First District, Boston, Massachusetts, for defendant. Francis D. Phillips, II, District Attorney, Goshen (Lorri Goldberg of counsel), for plaintiff.

Defendant is charged in this indictment with the crime of Criminal Possession of a Weapon in the Second Degree.

In his omnibus motion, defendant's moved to dismiss the indictment claiming that he is exempt from prosecution for Criminal Possession of a Weapon in the Second Degree by the application of the Law Enforcement Officers Safety Act of 2003 (LEOSA).   To establish that a particular person is exempt from prosecution pursuant to LEOSA, it must be shown that the person is a qualified law enforcement officer and that proper identification was carried with the weapon.   In addition, defendant argued that the seizure of the weapon was improper.

Pursuant to the Decision and Order of the court, a hearing was held on May 8, 2008 to determine the lawfulness of the seizure of the handgun from defendant's car and to determine whether the defendant was exempt from prosecution pursuant to LEOSA.

FACTS:

At the hearing facts were presented relating to the stop of defendant's vehicle and facts relating to defendant's status as a qualified law enforcement officer.

A.   Stop and Search/Statements

On May 16, 2007, City of Newburgh Police Officer Kevin Lahar was on patrol in the City of Newburgh at 12:27 a.m. At that time he observed a four door dark colored Lexus traveling westbound on Broadway as he was driving eastbound on Broadway.   He estimated that the defendant's vehicle was traveling at a rate of 40 m.p.h. in a 30 m.p.h. zone.

Officer Lahar turned around and stopped the vehicle and approached.   Because the windows were tinted, he could not see how many occupants were in the vehicle until he approached the driver's window which was down.   From the driver's window he noticed that there were two occupants inside the defendant's vehicle.   He learned that the driver was defendant Benjamin Booth and the passenger was Cornelius Stubbs.

Officer Lahar asked defendant for his license and registration.   Defendant provided a New York State Identification card and the vehicle registration.   After a radio check of the documentation, Officer Lahar learned that there was a pending warrant for defendant out of the City of Newburgh and that

defendant's license was suspended.    A backup officer arrived at the scene and learned that the passenger, Cornelius Stubbs, did not have a valid license.

Officer Lahar requested a tow for the vehicle and asked if there was anything in the vehicle that he should be made aware of.    The defendant said "no."    Officer Lahar then began to inventory the contents of the car.    During the inventory, he found a loaded Glock 23 handgun under the driver's seat in a pull out compartment.    The magazine contained 12 rounds and there was an additional round in the chamber.    Officer Lahar had another conversation with defendant during which the defendant stated that he did not have a license to possess a firearm.    Officer Lahar also recovered two identification cards on the defendant's person.    The defendant did not tell the officers that he had identification on his person before it was seized.    The defendant was then transported to the police station.

Defendant was brought into a booking room and was advised of his Miranda rights.    The defendant signed off on the warnings and agreed to speak with the police officers without counsel present. During the conversation, defendant stated that he received a waiver from the Coast Guard to use the firearm to practice and that he had recently used the gun at the range.

B.   Status as Qualified Law Enforcement

Lieutenant Benjamin William Stevenson of the United States Coast Guard testified credibly regarding the scope and nature of the duties of the defendant as a member of the United States Coast Guard. According to Lt. Stevenson, defendant was permitted to carry a weapon when conducting operations for the Coast Guard.    In addition, defendant was required to be in uniform, to use a badge and to carry an identification card when conducting operations.    Subject to numerous regulations and rules, the defendant was authorized to make arrests and generally take part in law enforcement duties as part of his duties as a boarding officer with the Coast Guard.    His authority to carry a weapon did not extend beyond his role as a uniformed member of the Coast Guard and he was not permitted to carry a concealed weapon while out of uniform.

CONCLUSIONS:

Chapter 44 of Title 18 of the United States Code, Section 926B(a) states in relevant part that "notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce ." Subdivision (c) states that a qualified law enforcement officer means an employee of a governmental agency who "(1) is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has statutory powers of arrest: (2) is authorized by the agency to carry a firearm; (3) is not the subject of any disciplinary action by the agency; (4) meets standards, if any, established by the agency which require the employee to regularly qualify in the use of a firearm; (5) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and (6) is not prohibited by Federal

law from receiving a firearm."   Subsection (d) defines identification as photographic identification issued by the governmental agency which employs the individual as a law enforcement officer.

Based upon the testimony at the hearing, it is evident that defendant, Benjamin Booth is a qualified law enforcement officer as set forth in Chapter 44 Section 926B of the United States Code. He is authorized to carry a firearm while engaged in his duties as a boarding officer.   These duties were defined as the prevention, detection, investigation of violations of the law and defendant has the authority and duty to arrest violators.   He is qualified to carry a firearm and at the time of his arrest, he was not under the influence of alcohol or any other drug.   In addition, at the time he was found to be in possession of a handgun in the City of Newburgh, he carried two forms of photographic identification issued by the Coast Guard.

Based upon a reading of Chapter 44 of Title 18 of the United States Code, Section 926B(a) and applying the facts brought forth at the hearing, the court finds that the defendant is exempt from prosecution under New York State Law as a result of LEOSA.   None of the arguments put forth by the People supply any proof that defendant was not protected from criminal prosecution by this act.   Although the proof at the hearing indicates that the defendant engaged in a violation of rules, regulations and policies of the United States Coast Guard by possessing a handgun for which he had no license, these violations do not act to lessen the scope of LEOSA as it is applied in this instance.   When distilled to the salient facts, the evidence presented at the hearing showed that the defendant was a qualified law enforcement officer who possessed photographic identification issued by the Coast Guard.   Accordingly, he is exempt from prosecution and the indictment must be dismissed.

Issues surrounding the defendant's claims that the search and seizure was improper need not be decided in light of the finding that the defendant is exempt from prosecution.

The foregoing constitutes the decision and order of the Court.

ROBERT H. FREEHILL, J.