UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ERIC RAMIREZ,                          :          15cv3225 (DLC)
                                       :
                 Plaintiff,            :          OPINION AND ORDER
                                       :
       -v-                             :
                                       :
PORT AUTHORITY OF NEW YORK & NEW       :
JERSEY (PANYNJ), PORT AUTHORITY POLICE :
DEPARTMENT OF NEW YORK & NEW JERSEY,   :
POLICE OFFICER KEVIN SCHPAKOW, POLICE  :
OFFICER THOMAS JARDINES, POLICE        :
OFFICER ROBERT JOSEPH, POLICE OFFICER  :
COLLIN JOURNEY, and POLICE OFFICER     :
ANDREW VANNATA, POLICE OFFICERS "JOHN  :
DOE" (1-5), THE CITY OF NEW YORK,      :
POLICE COMMISSIONER WILLIAM BRATTON,   :
THE NEW YORK CITY POLICE DEPARTMENT,   :
NEW YORK COUNTY DISTRICT ATTORNEY      :
CYRUS VANCE, JR., individually and as  :
District Attorney of New York County,  :
ASSISTANT DISTRICT ATTORNEY            :
 "JOHN DOE", individually and as an    :
Assistant District Attorney, all being :
sued in their official and individual  :
capacities,                            :
                                       :
                 Defendants.           :
                                       :
-------------------------------------- X

APPEARANCES:

For the plaintiff:
Anthony M. Mahoney
Revellino & Byczek LLP
3000 Marcus Avenue, Suite 3E7
Lake Success, New York 11042

For the District Attorney Defendants:
Elizabeth Norris Krasnow
New York City District Attorney's Office

One Hogan Place
New York, NY 10007

For the Port Authority Defendants:
Karla Denalli
Juan Barragan
Law Office of James Begley
140 Greenwich St., 24th Floor
New York, NY 10007

For the City Defendants:
Joanne McLaren
New York City Law Department
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

This case arises from the arrest, interview, detention, and prosecution of Eric Ramirez ("Ramirez").  Ramirez alleges that he was targeted for arrest because he is Hispanic and that his constitutional rights were violated by a racially-motivated, malicious prosecution.  There are three sets of defendants in this case, each of which filed its own motion to dismiss.  The three sets of defendants are the District Attorney ("DA") Defendants,[1] the Port Authority Defendants,[2] and the City

---

[1] The DA Defendants include: Cyrus Vance, Jr., the New York County District Attorney, and Rachel Ehrhardt, an assistant DA.

[2] These defendants include: the Port Authority of New York and New Jersey, the Port Authority Police Department, as well as Officers Thomas Jardines, Robert Joseph, Collin Journey, Kevin Schpakow, and Andrew Vannata.

Defendants.[3]  To consider prior statements by Ramirez concerning his arrest upon which the defendants relied, a portion of the motion practice was converted to a motion for summary judgment. For the reasons that follow, all three motions are granted in their entirety.

## Background

These facts are taken from the complaint, documents integral to those claims, or are undisputed.  On April 27, 2013, Ramirez was driving through New York with his girlfriend, J.B., and their two-year-old daughter.  They parked their vehicle outside the Port Authority of New York and New Jersey ("PANY") Bus Terminal.  Ramirez had become concerned that J.B. was behaving erratically, particularly after she indicated that she had brought her gun with her to New York City.  Because of his concern over his child's safety, Ramirez took his daughter into the Port Authority and used its Port Authority Police Assistance telephone to report that J.B. had a gun in their car.[4]  In a sworn statement submitted in connection with his state court prosecution, Ramirez asserts that "[t]here is no doubt that I

---

[3] The City Defendants include: New York City, Police Commissioner William Bratton, and the New York City Police Department.

[4] In addition to the complaint, the facts recited here come from arrest reports from April 27, 2013, as well as Ramirez's two sworn affidavits of January 27, 2014, and April 22, 2014.

reported the presence of the weapon in the car to the Port Authority Police."  Responding to Ramirez's call, Port Authority officers went to the car and found a loaded firearm.  The loaded firearm was located near the child's car seat, on the floor behind the driver's seat, and it was in plain view along with a second magazine of ammunition.

Ramirez is a Pennsylvania Constable, which means that he is licensed to carry a firearm in Pennsylvania.  The Law Enforcement Officer Safety Act ("LEOSA"), 18 U.S.C. § 926B, permits him to carry concealed firearms across state lines if he has proper identification and meets other conditions.[5]  Once the PAPD officers approached him on April 27, Ramirez identified himself as a constable, indicating that, pursuant to LEOSA, he could carry a gun in New York even though he was not licensed to

---

[5] LEOSA establishes that "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b)."  18 U.S.C. § 926B(a).  The statute further defines "qualified law enforcement officer" as "an employee of a governmental agency who (1) is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has statutory powers of arrest"; and (2) "is authorized by the agency to carry a firearm." 18 U.S.C. § 926B(c).  LEOSA requires that the identification be "the photographic identification issued by the governmental agency for which the individual is employed as a law enforcement officer." 18 U.S.C. § 926B(d).

do so under state law.

Despite LEOSA, Ramirez was arrested on April 27, 2013, for possessing a firearm, a Class C Felony, and for endangering the welfare of a child, a Class A Misdemeanor.  The charges asserted that Ramirez and his girlfriend, J.B., left a loaded gun within the reach of their child in their car.  According to Ramirez's complaint, following his arrest Ramirez was held in custody either 72 hours or for seven days; the complaint is inconsistent on this point.[6]  Employees of the DA's office interviewed Ramirez and decided to bring both charges to a grand jury.  The grand jury indicted Ramirez on both charges in October 2013.

In December 2013, Ramirez moved to dismiss the indictment. On April 29, 2014, a Justice of the New York County Supreme Court granted Ramirez's motion to dismiss.  The court reviewed the Grand Jury transcript in camera and found that the indictment was legally insufficient.  In dismissing the indictment, the court ruled that the evidence against Ramirez was inadequate because it came solely from Ramirez's girlfriend, who was his accomplice.  In New York, testimony from an accomplice alone is insufficient to support a conviction, and

---

[6] There are other factual inconsistencies in the complaint.  For example, the complaint includes at least one date that bears no relationship to the facts of this case, and appears to have been copied and pasted from a complaint filed by the same law firm in a prior action filed in this district, Rodriguez v. City of New York et al., 09cv3642.

the DA's failure to instruct the Grand Jury on this rule warranted dismissal of the indictment. <u>See</u> NYCPL §§ 60.22, 210.20. The state court also dismissed the indictment because the DA failed to instruct the Grand Jury that J.B.'s testimony was only admissible against her, not Ramirez.

Anthony M. Mahoney ("Mahoney") filed the initial complaint in this action on Ramirez's behalf on April 24, 2015. Several of its key allegations contradict the statements that Ramirez had previously made in sworn affidavits filed in connection with his state court prosecution. For example, the complaint alleges that Ramirez did not know that J.B. had a firearm in the car and asserts that his arrest was due to racial profiling. These claims are inconsistent with the undisputed fact that Ramirez called the police to report the gun in his and J.B.'s car, that the police approached the car in response to that call, and that the police discovered a loaded weapon in the car.

Ramirez alleges a litany of causes of action in his amended complaint, some of which are difficult to construe. Ramirez brings the following claims against all defendants: (1) a deprivation of his civil rights under 42 U.S.C. § 1981; (2) false arrest, specifically naming the individual PAPD officers; and (3) malicious prosecution, specifically naming Ehrhardt. He brings these claims against all individual defendants, both in

6

their official and personal capacities: (1) violations of his First,[7] Fourth, Fifth, and Fourteenth Amendment rights and violations of 18 U.S.C. § 926B under 42 U.S.C. § 1983; and (2) conspiracy to violate Ramirez's civil rights under 42 U.S.C. § 1985.  Ramirez alleges against the municipal defendants violations of his constitutional rights through their policies and failure to train employees under 42 U.S.C. § 1983.  Against the City, District Attorney Cyrus Vance ("Vance") and Police Commissioner William Bratton ("Bratton"), Ramirez alleges a failure to train or supervise employees, which is apparently duplicative of the § 1983 and Monell claims against the City, Bratton, and Vance in their supervisory capacities.  Finally, Ramirez brings what appears to be a selective prosecution claim against the City, Vance, and Ehrhardt.

An initial conference was held on July 17, 2015.  Mahoney appeared at the July conference; counsel for the defendants did not appear because Mahoney had served only three defendants the day before the initial conference.

After being served, the DA Defendants filed a motion to dismiss on August 20, 2015.  That motion principally argued that the DA Defendants are entitled to absolute immunity and that

---

[7] The references in the complaint to the First Amendment seem to be in error, since there are no claims related to Ramirez's First Amendment rights.

there was probable cause to arrest and prosecute Ramirez.
Mahoney filed an amended complaint on September 24, 2015.[8]  The
factual allegations in the amended complaint are the same as
those in the original complaint.  Mahoney did not attempt to
plead the facts with greater specificity or accuracy in response
to the DA Defendants' arguments.  In the amended complaint,
Mahoney did add two of the causes of action -- for failure to
train and for selective prosecution -- and attached two state
court decisions.  Those decisions involve the application of
LEOSA to Pennsylvania State Constables and to officials of the
United States Coast Guard, and do not address any of the DA
Defendants' arguments related to absolute immunity.

On October 16, 2015, a second initial conference was held
at which Mahoney's co-counsel appeared.  At the conference, the
Court discussed with plaintiff's counsel the obstacles he would
face on the issue of absolute prosecutorial immunity, as well as
the fact that he appeared not to have complied with state
procedures for suing the PANY and the City.  Ramirez's counsel
stated that a notice of claim with the City was "certainly"
filed within 90 days of Ramirez's arrest.  The notice of claim
was filed on October 15, 2014, however, which is roughly

---

[8] Plaintiff's counsel had some difficulties with the electronic
filing system, and the amended complaint was successfully filed
on September 30.

seventeen months after Ramirez's arrest on April 27, 2013.

The DA Defendants' motion to dismiss the amended complaint became fully submitted on October 26.  The motions to dismiss by the Port Authority Defendants and the City Defendants were fully submitted on November 20.  On November 17, the motions to dismiss were converted to motions for summary judgment only on the issue of probable cause and the fact that Ramirez was the one who called the PAPD to alert it to the gun in the car.  The November 17 Order listed the key materials and facts that would be used to decide these issues.  These materials included Ramirez's affidavits, arrest reports from 2013, and the state court decisions relevant to his criminal case.[9]  The parties were given until December 4 to supplement their factual submissions on the relevant issues or place any material facts in dispute.

In response, on December 3, Mahoney filed an additional copy of the state court decision dismissing the indictment against him and his one-page analysis of that decision.  He did

_____

[9] These were not the only exhibits that the defendants submitted in connection with their original motions.  For example, in Ramirez's opposition to the DA Defendants' motion to dismiss, he wrote that the DA Defendants "illegally detain[ed]" him "for the purpose of repeatedly and angrily trying to persuade him to falsely change his statements."  To rebut those allegations, the DA Defendants submitted a video of his interview with an Assistant DA.  That video contradicts the accusations in Ramirez's brief.

not submit any further affidavit from Ramirez[10] or otherwise
contradict the evidence that Ramirez had placed the call that
prompted the Port Authority officers to search the car and that
Ramirez knew and had reported that there was a firearm in the
car.

## Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R.
Civ. P., a court must "accept all allegations in the complaint
as true and draw all inferences in the non-moving party's
favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d
471, 475 (2d Cir. 2009). "To survive a motion to dismiss under
Rule 12(b)(6), a complaint must allege sufficient facts which,
taken as true, state a plausible claim for relief." Keiler v.
Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain
sufficient factual matter, accepted as true, to state a claim
for relief that is plausible on its face."). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the

---

[10] Before the motions to dismiss were converted in part to
motions for summary judgment, Ramirez submitted one affidavit
attached to his opposition to the DA Defendants' motion to
dismiss. That affidavit did not address the issues that were
converted to summary judgment. The affidavit sought to allege
Ehrhardt's personal involvement in Ramirez's arrest and
prosecution as well as imply that she acted as an investigator
in an attempt to overcome absolute prosecutorial immunity.

defendant is liable for the misconduct alleged." Parkcentral
Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208
(2d Cir. 2014) (citation omitted).

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a).  "There is
no genuine issue of material fact where the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party."  Fabrikant v. French, 691 F.3d 193, 205 (2d
Cir. 2012) (citation omitted).  Only disputes over material
facts -- "facts that might affect the outcome of the suit under
the governing law" -- will properly preclude the entry of
summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  Ultimately, the test for summary judgment "is
whether the evidence can reasonably support a verdict in
plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149,
157 (2d Cir. 2000).

## I. Section 1983: False Arrest and Malicious Prosecution

With the limited exception addressed separately below, each
of the plaintiff's claims brought pursuant to § 1983 is subject
to dismissal because there was probable cause for his arrest and

prosecution.[11]  On November 17, 2015, the motions to dismiss were
converted to motions for summary judgment on the issue of
probable cause and on the fact that Ramirez called the PAPD to
report that J.B. had a gun in their car.  Based on the
undisputed facts described above, there was probable cause to
arrest and prosecute Ramirez as a matter of law.  See Finigan v.
Marshall, 574 F.3d 57, 61 (2d Cir. 2009) (courts may decide
whether probable cause exists as a matter of law on a motion for
summary judgment).

     "Probable cause for an arrest requires an officer to have
knowledge or reasonably trustworthy information sufficient to
warrant a person of reasonable caution in the belief that an
offense has been committed by the person to be arrested."
Fabrikant, 691 F.3d at 214 (citation omitted).  Probable cause
"does not require absolute certainty," and "[w]hen determining
whether probable cause exists, courts must consider those facts
available to the officer at the time of the arrest and
immediately before it."  Id. (citation omitted).  "The probable
cause standard in the malicious prosecution context is slightly

---

[11] The DA Defendants are also entitled to absolute immunity
because all of their alleged misconduct occurred as they were
carrying out their core prosecutorial functions.  Giraldo v.
Kessler, 694 F.3d 161, 165 (2d Cir. 2012).  Because the claims
are dismissed on the merits, it is unnecessary to address the
Eleventh Amendment issues associated with bringing claims
against the individual defendants in their official capacities.

higher than the standard for false arrest cases." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013).  "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." Id. at 94-95 (citation omitted).  Probable cause is also "an absolute defense to a false arrest claim." Torraco v. Port Auth. of New York & New Jersey, 615 F.3d 129, 139 (2d Cir. 2010); Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (upholding a dismissal of a false arrest claim based on a finding of probable cause). This complete defense exists whether the claims for malicious prosecution and false arrest are brought under state or federal law.  Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013).

Upon his arrest, Ramirez was charged with criminal possession of a weapon in the second degree under NYPL § 265.03(3), which prohibits a person from possessing "any loaded firearm."  He was also charged with endangering the welfare of a child, or "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than

seventeen years old."  NYPL § 260.10(1).  The undisputed facts
of this case provide ample support for probable cause for
Ramirez's arrest and his prosecution on both charges.

The PAPD received a call from Ramirez that his girlfriend
had a gun in her car.  The officers then found the loaded
firearm on the floor behind one of the front seats in the car,
near the child's car seat.  Neither Ramirez nor his girlfriend
had a license to carry a firearm in New York, and even if
Ramirez was protected by LEOSA, the PAPD officers had probable
cause to arrest him.  Probable cause requires the officers to
have the belief that "an offense" had been committed.
Fabrikant, 691 F.3d at 214 (emphasis added) (citation omitted).
The precise charges and possible defenses do not need to be
known at the time of arrest.  See Torraco, 615 F.3d at 140
(holding that there was probable cause to arrest someone for
possession of a firearm, even though it was later found that 18
U.S.C. § 926A provided him with a defense to the charge).
Moreover, there was sufficient information such that the DA's
office could reasonably believe Ramirez was guilty of the
offenses at the early stage of his prosecution.  Ramirez's
indictment was dismissed due to a procedural defect and not
because the evidence was insufficient to establish probable
cause.  Finally, even if LEOSA protected Ramirez from arrest for

carrying a concealed weapon and the DA's office should have known of its provisions, Ramirez was not charged with only that violation of the law.  There was probable cause to prosecute Ramirez on the child endangerment charge because the loaded gun was found in the same area of the car as his two-year-old daughter's car seat.  Ramirez does not dispute any of the material facts related to probable cause.

## II.  Section 1983: LEOSA

The plaintiff also alleges that a violation of LEOSA, 18 U.S.C. § 926B, forms the basis for a claim under § 1983.  In support of their motion to dismiss, the Port Authority Defendants argue that LEOSA does not create a federal right that is actionable under § 1983.  Ramirez did not address this argument in his opposition brief.  Whether LEOSA creates an individual federal right is a question of first impression in this circuit.

Section 1983 "is enforceable only for violations of federal rights, not merely violations of federal laws."  Torraco, 615 F.3d at 136.  There are three factors, known as the "Blessing factors," that are used to determine the existence of a federal right.  Id.  They are: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the

15

statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." Id. (citation omitted).  These factors should not be applied "too strictly," however, because there may be "other considerations" that "show that Congress did not intend to create federal rights actionable under § 1983." Id. (citation omitted).  Moreover, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under § 1983." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).  In sum, nothing "short of an unambiguously conferred right" can "support a cause of action brought under § 1983." Id. at 283.

One district court has considered whether LEOSA creates such a federal right and decided that it does not. Duberry v. D.C., -- F. Supp. 3d. --, 2015 WL 3413526 (D.D.C. May 28, 2015). In Duberry, the plaintiffs argued that LEOSA created a "negative right . . . to be free from District officials' misapplication of LEOSA's" definition of "law enforcement officer." Id. at *14.  Ramirez does not specify in his complaint what rights LEOSA confers, he instead refers to his rights under the Constitution and LEOSA collectively.  Construing his complaint generously, however, Ramirez could be claiming that, as a law

enforcement official, he has a right to be free from arrest for carrying a concealed weapon as long as he complies with LEOSA's terms.  This implied argument fails.  LEOSA's text and Second Circuit case law about a similar statute confirm that Congress did not intend for LEOSA to create rights that are actionable under § 1983.

In construing 18 U.S.C. § 926A, a statute similar to LEOSA, the Second Circuit held that it does not create a federal right. Torraco, 615 F.3d at 136-37.  18 U.S.C. § 926A provides that "any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose" if that person meets certain conditions.  The Second Circuit found that § 926A satisfied the first Blessing factor because Congress intended the provision to benefit the plaintiff.  Torraco, 615 F.3d at 137.  The court found, however, that the statute did not satisfy the other Blessing factors.  Id.  The "practical problems" with enforcement of such a right and "the accompanying possibility that the fear of increased liability could chill enforcement of firearm regulations[] undermine the argument that Congress granted a benefit that was intended to be an individual right." Id.  Moreover, there is "no evidence . . . that Congress intended that police officers tasked with enforcing state gun

laws should be liable for damages when they fail to correctly apply § 926A."  Id.

LEOSA shares these features, indicating that Congress did not intend to make its violation actionable under § 1983.  This is true even assuming that LEOSA creates an individual right for law enforcement officers to carry concealed weapons under certain conditions.  See Duberry, 2015 WL at *16 (reasoning that LEOSA appears to create a right for law enforcement officials to carry a concealed firearm without directly deciding the issue).[12] Like § 926A, enforcement of LEOSA is "vague and amorphous," indicating that Congress did not intend for it to create a right whose violation would be actionable under § 1983.  The warning in Torraco that allowing actions for damages based on violations of LEOSA could cause law enforcement to hesitate before

---

[12] Although the Duberry court found that LEOSA might satisfy the first Blessing factor by creating a right for certain law enforcement officials to carry a firearm, the statutory language indicates otherwise.  The permissive language in LEOSA shows that Congress did not unambiguously create a right, as Supreme Court precedent requires.  LEOSA provides that certain qualified law enforcement officials "may carry a concealed firearm that has been shipped or transported in interstate commerce."  18 U.S.C. § 926B(a) (emphasis added).  In contrast, § 926A provides that individuals who are licensed to carry a gun in one state "shall be entitled to transport" that firearm under certain conditions.  The difference between the mandatory language in § 926A, which led the Second Circuit to find that it satisfied the first Blessing factor, and the permissive language in LEOSA, is telling.  See Lopez v. Davis, 531 U.S. 230, 241 (2001) ("shall" and "may" have different statutory meanings, particularly when both terms are used in the same section).

enforcing gun control laws further indicates that Congress did not intend to create a federal right.  Because LEOSA does not create an individual right actionable under § 1983, Ramirez's § 1983 claims based on violations of LEOSA are dismissed.

**III. Sections 1981 and 1985**

Ramirez also brings claims pursuant to 42 U.S.C. §§ 1981 and 1985.  42 U.S.C. § 1981(a) provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings."

> To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

42 U.S.C. § 1985(3) provides in relevant part that "[i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages."  A conspiracy claim under § 1985(3) requires a

19

plaintiff to allege:

> 1) a conspiracy; 2) for the purpose of depriving,
> either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws; and 3)
> an act in furtherance of the conspiracy; 4) whereby a
> person is either injured in his person or property or
> deprived of any right or privilege of a citizen of the
> United States.

Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citation

omitted).  "The conspiracy must also be motivated by some racial

or perhaps otherwise class-based, invidious discriminatory

animus."  Id. (citation omitted).

The complaint does not contain any facts that support the

elements of Ramirez's §§ 1981 and 1985 claims.  Ramirez has not

alleged that the rights enumerated in § 1981, such as the

ability to enter into contracts, were violated.  Moreover,

Ramirez does not allege any facts that, if true, would prove a

conspiracy or agreement under § 1985, let alone a conspiracy

motivated by racial animus.  The amended complaint "contains

only conclusory allegations that the defendants violated

[Ramirez's] rights."  Morales v. City of New York, 752 F.3d 234,

238 (2d Cir. 2014).  Without more, these allegations are

insufficient to survive a motion to dismiss.

## IV.  State Law Claims

Ramirez does not clearly identify his causes of action for

false arrest and malicious prosecution as state law claims.  The
defendants have construed the claims as arising under state law,
however.

Supplemental jurisdiction exists over state law claims
"that are so related to claims in the action within [the
Court's] original jurisdiction that they form part of the same
case or controversy under Article III of the United States
Constitution," 28 U.S.C. § 1367(a).  In other words, federal
courts may assert supplemental jurisdiction over claims that
"derive from a common nucleus of operative fact." Delaney v.
Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation
omitted).  To decide whether exercise supplemental jurisdiction,
the court must weigh "the traditional 'values of judicial
economy, convenience, fairness, and comity.'" Kolari v. New
York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)
(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350
(1988)).  Here, convenience and judicial economy weigh heavily
in favor of resolving these straightforward claims as part of
the motions to dismiss.

The apparent state law claims are for false arrest and
malicious prosecution.  Since probable cause for the arrest and
prosecution existed as a matter of law, those claims are also
dismissed against all defendants.

21

**V. Ramirez's Request to Amend the Complaint**

In his opposition briefs, Ramirez requests the opportunity to amend his complaint to remedy its legal insufficiency.  He only makes one definite request to amend his complaint,[13] and otherwise generally states that if his complaint is legally insufficient, he is happy to "insert the necessary facts to satisfy [the] pleading requirements."

"When a party requests leave to amend its complaint, permission generally should be freely granted."  Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citation omitted); Fed R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  "Leave to amend may properly be denied if the amendment would be futile," however.  Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014).  "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss."  Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015) (citation omitted).

There is nothing to suggest that, if given the opportunity to amend his complaint, Ramirez would be able to make out a

---

[13] Ramirez's only specific request to amend is that he would like to add that he served the City with the notice of claim required by state law.  Amending the complaint to state that the notice of claim was filed would be futile for two reasons: 1) the notice of claim was not filed within the required 90 days, N.Y. Gen. Mun. Law § 50-e, and 2) the state law claims for which the notice is required are dismissed on the merits as discussed above.

claim that would survive a motion to dismiss.  Ramirez has not presented a proposed amended pleading or identified the facts he wishes to add.  His own sworn statements in the state court proceedings show that there was probable cause for his arrest and demonstrate that his claims here are premised on material misrepresentations and omissions.  Moreover, he already had one opportunity to amend his complaint and many of his allegations remain so conclusory that most of them are entitled to no weight.  Finally, when given an opportunity to present evidence to raise a question of fact regarding the existence of probable cause, he failed to present any evidence that would do so. Ramirez therefore cannot amend his complaint.

### Conclusion

The DA Defendants' October 2, 2015, motion to dismiss is granted.  The Port Authority Defendants' October 15, 2015 motion to dismiss is granted.  The City Defendants' October 15, 2015, motion to dismiss is granted.  The Clerk of Court shall enter judgment for all defendants.

Dated:    New York, New York
          December 28, 2015

                              _____
                              DENISE COTE
                     United States District Judge